## No. 10,137.

### MRS. R. A. McNAIR vs. MRS. E. C. GOURRIER, EXECUTRIX, ETC.

In a suit in which the plaintiff makes claim for a definite sum invested as her share of the capital stock of a partnership, and also for another and indefinite sum as her share of the net profits thereof on final liquidation and settlement, a motion to compel her to elect will not prevail.

During the progress of the trial it is improper to appoint *ex parte* a single expert, when there is no professional opinion to be given on any question on the decision of which the case depends.

It is improper for the report of auditors to be admitted in evidence before it has been duly homologated. The proceedings for the homologation of the report of auditors constitute a trial of its accuracy and sufficiency to be admitted in evidence.

The appointment of a liquidator is one of those matters that must be left, in a great measure, to the sound discretion of the court.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Burgess,* J.

---

*C. C. Bird* and *Kernan & Laycock* for Plaintiff and Appellee.

*R. N. Sims* and *Read & Goodale* for Defendant and Appellant.

23

I.

The opinion of the Court was delivered by

WATKINS, J. This is a suit for the liquidation and settlement of an alleged partnership and the adjustment of differences between the partners.

The plaintiff claims to be the surviving member of the firm styled Gourrier & McNair, and her suit is directed against the legal representative of her deceased associate, Clay Gourrier.

Her predeceased husband, Henry McNair, was a member of a firm, also styled Gourrier & McNair, which had been engaged for many years in the business of insurance agents, in the city of Baton Rouge. He died on the 22d of September, 1884.

She represents that thereafter she became a partner of the surviving member, Clay Gourrier, in a *new* business, of like character as the old one, which was to continue for one year from the 1st of October, 1884, and under the old firm name, Gourrier & McNair.

She claims to have put into this enterprise $3125 as her proportion of its capital stock, which was to be first restored to her at its termination, and thereafter she was to receive one-half of the net profits of the business.

This partnership, she contends, operated a successful and prosperous business and realized large profits, aggregating $3000 or more for her share.

In order that her interest be ascertained and the affairs of the partnership liquidated and settled, she prayed for the appointment of a liquidator, and, on suitable allegations, obtained the judicial sequestration of the books and other partnership property.

She asks judgment decreeing the restitution of her capital and for her share of one-half of the ascertained net profits of the business.

The defendant executrix denies the existence of the alleged partnership between the deceased and the plaintiff, but admits the existence of one between the deceased and Henry McNair, the plaintiff's husband, prior to his death.

She represents that McNair kept the books of that firm and had exclusive charge of the cash and its disbursement; that after his death, it was discovered that he had overdrawn his account, and had kept back funds belonging to the insurance companies whereby an indebtedness of $12,000 had been created—a sum far in excess of the assets of the firm, and which endangered the personal estate of her deceased husband, Clay Gourrier, that of McNair being insolvent.

That her said husband caused an estimate to be made of the lowest

possible sum that was required to meet the immediate emergency and discharge the most pressing liabilities, and to thus protect the good name of McNair from dishonor; that it was ascertained to be $3024 01; that her husband's defalcation was made known to the plaintiff and the amount required to meet and discharge it, and that she contributed that sum for that purpose.

Her contention, further, is that after the death of McNair the business of the firm of Gourrier & McNair was continued under the name and style of that partnership, by the surviving partner, Clay Gourrier, simply for the purpose of liquidating and settling up its affairs, and that its earnings were inadequate to reimburse and make good the *additional* deficiencies of McNair that were ascertained in the *interim.*

She prays the dissolution of plaintiff's sequestration and $500 damages.

On these issues and pleadings the parties went to trial, and from an adverse judgment the defendant has appealed. In this Court the plaintiff has answered the appeal, and assigned as an error of the judge *a quo* the charge against her of $243, being one-half a debt of the old firm of Gourrier & McNair, with which she is improperly debited, and from which she asks relief.

On the trial there were quite a number of witnesses interrogated in the presence of the court, and some under commission, and, as in many other cases, unfortunately, they made numerous unsatisfactory, conflicting and contradictory statements that are exceedingly difficult to reconcile with each other or harmonize with the theory of either party.

We shall not attempt to follow them or reconcile their differences—indeed, it would prove futile if we should—but will rest content with a simple recital of those facts that appear from the record to be well founded and exercise a material bearing on the case.

They are as follows, viz:

The firm of Gourrier & McNair was composed of Clay Gourrier, deceased husband of the defendant, and Henry McNair, deceased husband of the plaintiff, and they were engaged in business as insurance agents, with their domicile at Baton Rouge. It was dissolved by the death of McNair, on the 22d of September, 1884.

Soon after Gourrier ascertained that there were some debts that the firm owed, and among the number some that were due to different insurance companies for premiums that had been collected and not remitted. He caused an examination of the books to be made, and the amount was ascertained to be $3024 01—i. e., the amount of the

debts, the payment of which was pressing and immediately necessary, and not the gross sum, which was in excess of that—a sum which could not be presently realized out of the partnership assets, but which might be eventually collected therefrom.

Gourrier visited the plaintiff and represented to her this state of facts, and besought her assistance in making good this alleged shortage of her husband. She at first refused, assigning as a reason that her husband had requested her not to spend any part of her insurance money—$10,000—in payment of his debts. But Gourrier was persistent in his entreaties, and exhibited to her the statement that he had caused to be made from the partnership books, and she, after consulting her friends, yielded her consent and gave him a check for the $3024 01 that her husband was alleged to owe the insurance companies.

From the testimony of the *witnesses* we cannot precisely determine the object plaintiff had in view in furnishing this sum, but we think a fair preponderance of the *entire evidence* favors the theory that she advanced it to Gourrier for the purpose of enabling him to discharge the alleged confidential indebtedness of her deceased husband.

It is certain that she was in no manner personally bound for its payment, and that more than ordinary reasons influenced her to part with this to her large sum of money in disobedience to her husband's request. Doubtless, she believed that it was necessary to shield his good name from dishonor. But there is nothing in the record to justify the conclusion that it was intended by her as a gratuity, and a gratuity is never presumed.

Our opinion is that she intended it as an *advance* of money to the surviving partner of her husband's firm, with which he was to satisfy those urgent demands, and with the expectation of having it reimbursed to her out of its assets when a sufficiency thereof had been collected, and that she acted on her faith in his representations.

We are, further, of the opinion that, as an additional inducement to her to make this advance he proposed to continue the business of insurance agents under the firm name of Gourrier & McNair, for a period of one year from the 1st of October, 1884, and that they should participate in its profits equally.

We are, further, of the opinion that the plaintiff accepted this proposition, and that, in this manner, a new partnership was created between them. American Law Register, Vol. 27, p. 329, and authorities there cited.

The evidence discloses a good reason why such an arrangement

should have been desirable to each of the parties, and that was, that by this means the credit and good-will of the old partnership could be utilized, so that a profitable business would be guaranteed for the future, and the collection of the assets of that firm would be better assured.

It does not appear from the evidence that the statement, on the faith of which the plaintiff made the advance, was corret. There is nothing to show in what way this money was applied, and it seems that Gourrier rendered her no account of it after he received it.

If, as we have concluded, this sum was advanced by plaintiff on the hypothesis that it was imperatively necessary to make *immediate* payment of certain confidential debts of her husband, she was entitled to have the evidence of their discharge when same had been satisfied.

Under the evidence the plaintiff is entitled to one-half of the net profits of the new partnership business when liquidated and ascertained, the date of its formation being fixed as the 1st of October, 1884, and the date of its dissolution as the 29th of September, 1885, the date of Gourrier s demise.

Plaintiff is also entitled to reimbursement of the money advanced from the sum realized from the assets of the old partnership—not to payment or return of it as capital from the net profits of the new firm—and to an accounting, by the decedent, of the assets of the *old* that were left in his hands at the time of dissolution, and of the entire business and affairs of the *new*, of which he had sole and exclusive management.

## II.

The defendant filed a motion to compel the plaintiff to elect whether she would pursue her demand for the restitution of the $3024 01 capital invested, or that for the liquidation and settlement of the partnership.

It has been repeatedly decided that partners have no cause of action against each other for a specific sum *resulting from a partnership transaction*, until there has been a settlement of the partnership. 21 Ann. 582, Sewell vs. Cooper; 21 Ann. 3, Succession of Dolhonde; 24 Ann. 391, Staunton vs. Buckner.

As previously stated, plaintiff makes claim for $3125—as the amount of her share of the capital put in the new partnership—to be first withdrawn therefrom, and also for the settlement and liquidation of the business and affairs of the partnership and the recovery of one-half of the net profits thereof. Her demands are predicated on the dissolution of the partnership and payable out of its assets. In any

event, they can certainly be considered as resulting from the partnership transactions.

But, viewing her case as we have construed it, no practical difference results, notwithstanding the two partnerships are, in some sense, involved. Their transactions were dual between the same parties, evidenced by the same agreement, and depend upon the same evidence. They are so completely blended as to form essentially one cause of action, which may be considered and decided in one suit. Their determination in this suit will inflict injury upon neither party, nor occasion inconvenience to either.

The motion was properly refused.

### III.

During the progress of the trial an expert accountant was appointed to examine the books of the firm in which plaintiff claimed an interest, and he made a report which was admitted in evidence over defendant's objection and exception.

At a subsequent stage of the proceedings, auditors were appointed by the court, at the suggestion of defendant's counsel, to examine the books and accounts of the firm of Gourrier & McNair—i. e., the old firm, which, according to their theory, had been continued for the purposes of liquidation—and their appointment was opposed on the part of the plaintiff's attorneys.

The auditors made an examination of the books, and a report; but the latter was not homologated, and on that account its introduction in evidence was opposed by the defendant, though unsuccessfully, and a bill of exceptions retained.

We think it was error on the part of the judge to appoint a *single* expert *ex parte*, inasmuch as there was no professional opinion to be given on any question on the decision of which the case depended. C. P. 441.

It was likewise error on the part of said judge to admit in evidence the auditors' unhomologated report.   C. P. 453, 456, 457.

The proceedings for the homologation of the report of auditors constitute a trial of its accuracy and sufficiency to be admitted in evidence.   On such trial the court may rectify its errors, or order a new report.   C. P. 458.   This should be done, invariably, in case the account stated by the auditors between the parties is not sufficiently full, clear and succinct to enable the judge to intelligently and impartially determine their respective rights and interests.

Each of the parties have a perfect right to be heard *pro* and *con* on this question before it is admitted in the record as evidence.

"A report of auditors not homologated should not go to the jury." 2 Ann. 892, Reynolds vs. Rowley.

The judge cannot arbitrarily sustain or dismiss an opposition to the report. " He must try it summarily on its merits, and hear evidence on such questions of fact as it distinctly puts at issue." 12 Ann. 183, Thompson vs. Parisot; C. P. 456.

Inasmuch as we have arrived at a different solution of the questions at issue from that by the judge *a quo*—in greater part—the report of the auditors as made would not meet the present exigencies of the case in any event. It was improperly admitted in evidence.

### IV.

The judge of the court below, considering the report as evidence, arrived at the conclusion that the statement of the partnership accounts was sufficiently accurate to enable him to render a final judgment liquidating the affairs of the *new* partnership, to which it was confined; and he did not find it necessary to appoint a liquidator, as prayed for by the plaintiff.

There appears to be a large amount of assets that have been either uncollected or unaccounted for. There is no prayer in either petition or answer for the sale or division in kind of the partnership rights and credits, and they cannot be treated as cash, and, as such, used in settlement. Some disposition must be made of them before a liquidation and settlement of the partnership can be effected.

The appointment of a liquidator may be deemed necessary in order to effect their collection, if considered available; or, if not, to make a judicial sale of them.

But these questions are for the consideration of the lower court. The appointment of a liquidator is one of those matters that must be left in a great measure to the sound discretion of the judge. 11 Ann. 260, Pratt vs. McHatton.

On the whole, it is necessary that the case be remanded to the court *a qua* for a new trial, to be therein restricted to the issues not determined in this opinion and decree.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is further ordered, adjudged and decreed that the plaintiff do have and recover one-half of the net profits of the business of the *new* firm of Gourrier & McNair from the 1st of October, 1884, to the 29th of September, 1885, on final liquidation and settlement thereof.

It is further ordered, adjudged and decreed that the plaintiff do have and recover the sum of $3024.01 out of the moneys collected from the assets of the *old* firm of Gourrier & McNair on liquidation and final settlement contradictorily had in the suit.

It is finally ordered, adjudged and decreed that the demand of plaintiff for the restitution of $3125, capital invested, be rejected; that all other issues in the suit remain undetermined until a new trial is had in the court *a qua*, and that, for this purpose, the cause is remanded—further proceedings to be taken in pursuance of the views herein expressed.

The costs of appeal are to be paid by plaintiff and appellee, and those of the lower court to await the final determination of the cause therein.

### On Application for Rehearing.

A careful re-examination of this case has led us to the conclusion that there is only one amendment necessary to be made in our opinion, and that is in reference to the date at which the *business* of the *new* partnership of Gourrier & McNair terminated. In the opinion it is fixed at the date of Gourrier's death, on the 29th of September, 1885. There is evidence in the record going to show that the business was continued until some time in November following. We think that the ends of justice would be best subserved by leaving this question open for the determination of the lower court.

It is, therefore, ordered, adjudged and decreed that our former decree be so amended as to leave the date at which the *business* of the *new* firm of Gourrier & McNair terminated open for the ascertainment of the judge *a qua* on the new trial of the cause; and that, as thus amended, the same remain undisturbed.

Rehearing refused.